```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
RYAN RAMNARINE,

                        Plaintiff,                                    NOT FOR PUBLICATION

            - against -                                               MEMORANDUM & ORDER
                                                                      19-CV-5544 (PKC) (LB)
NATIONSTAR MORTGAGE, LLC; U.S
BANK ASSOCIATION; U.S. BANK
NATIONAL ASSOCIATION as trustee for
Structured Adjustable Rate Mortgage Loan
Trust, Mortgage Pass-Through Certificates,
Series 2006-2,

                        Defendants.
----------------------------------------------------------x
```
PAMELA K. CHEN, United States District Judge:

On October 1, 2019, Plaintiff Ryan Ramnarine, appearing *pro se*, filed this fee-paid complaint alleging that Defendants Heather Johnson, Steven J. Baum, P.C., and U.S. Bank wrongfully foreclosed on Plaintiff's home located at 89-40 210 Place, Queens Village, New York 11427 ("the Property"). (*See* Complaint, Dkt. 1.) On October 21, 2019, the Court dismissed the complaint for lack of subject matter jurisdiction but granted Plaintiff thirty days to file an amended complaint. (*See* Memorandum & Order, Dkt. 5); *see also Ramnarine v. Johnson*, No. 19-CV-5544 (PKC) (LB), 2019 WL 5309994 (E.D.N.Y. Oct. 21, 2019). On December 2, 2019, Plaintiff filed an amended complaint naming different defendants: Nationstar Mortgage LLC ("Nationstar"), U.S. Bank National Association ("U.S. Bank"), and U.S. Bank National Association as Trustee for Structured Adjustable Rate Mortgage Loan Trust, Mortgage Pass-Through Certificates, Series 2006-2 ("U.S. National Bank Association as Trustee"). (*See* Amended Complaint ("Am. Compl."), Dkt. 11.) On December 16, 2019, Plaintiff filed a motion for a temporary restraining

order ("TRO") and preliminary injunction ("PI"). (Dkt. 13.) For the reasons set forth below, the Court denies Plaintiff's TRO/PI motion and dismisses his amended complaint in its entirety.

## BACKGROUND

Plaintiff bought the Property in 2005.[1] (Am. Compl., Dkt. 11, ¶ 6.) At some point, the Property was foreclosed.[2] (*Cf. id.* (noting that the Property was sold in a foreclosure auction).) In May 2015, Plaintiff's mother offered to buy the Property for $375,000 in a short sale. (*Id.* ¶ 12.) Defendant Nationstar, Plaintiff's mortgage servicer, rejected this offer in June 2015 because the purported buyer, *i.e.*, Plaintiff's mother, was related to the homeowner, *i.e.*, Plaintiff. (*Id.* ¶¶ 7, 13.) On October 13, 2016, the Property was sold for $532,754.48 to Defendant U.S. National Bank Association as Trustee in a foreclosure auction. (*Id.* ¶ 6.) Plaintiff still resides at the Property. (*Id.*) He seeks damages and an injunction prohibiting both the sale of the Property without first giving him an option to buy it for the 2015-offered-price of $375,000.00 and preventing Defendants from evicting him from the Property. (*Id.* ¶¶ 28–31.)

## LEGAL STANDARD

The Court is mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations and citation omitted). A complaint must contain "sufficient factual matter, accepted as true, to

---

[1] "At the pleadings stage of a case, the court assumes the truth of 'all well-pleaded, nonconclusory factual allegations' in the complaint.'" *Durant v. N.Y.C. Housing Auth.*, No. 12-CV-937 (NGG) (JMA), 2012 WL 928343, at *1 (E.D.N.Y. Mar. 19, 2012) (quoting *Kiobel v. Royal Dutch Petrol. Co.*, 621 F.3d 111, 123 (2d Cir. 2010)).

[2] Though Plaintiff does not provide any specific information as to when the Property was foreclosed, it appears that the state foreclosure proceeding terminated with an order of foreclosure in 2009. *See Nationstar Mortg., LLC v. Ramnarine*, 100 N.Y.S.3d 278, 279 (N.Y. App. Div. 2019) (affirming the denial of Plaintiff's motion to vacate a judgment of foreclosure and sale).

state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations, brackets, and citation omitted).

Regardless of whether a plaintiff has paid the filing fee, a district court has the inherent power to dismiss a case *sua sponte* if it determines that the action is frivolous or that the court lacks jurisdiction over the matter. *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363–64 (2d Cir. 2000); *see also* Fed. R. Civ. P. 12(h)(3). "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000). An action is frivolous as a matter of law when, *inter alia*, it is "based on an indisputably meritless legal theory"—that is, when it "lacks an arguable basis in law . . . , or [when] a dispositive defense clearly exists on the face of the complaint." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 473 (2d Cir. 1998).

## DISCUSSION

### I. Sherman Act

Plaintiff alleges that Defendants refusal to accept his mother's 2015 short sale offer is a violation of Section 1 of the Sherman Act.[3] (Am. Compl., Dkt. 11, ¶ 14.) "To prevail on a claim

---

[3] The Court notes that "[a]t the threshold, Plaintiff cannot actually sue directly under the Sherman Act, 15 U.S.C. § 1, because 'Section 1 of the Sherman Act does not itself provide a private right of action.'" *Ruotolo v. Fannie Mae*, 933 F. Supp. 2d 512, 519 (S.D.N.Y. 2013) (quoting *In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 62 (2d Cir. 2012)). Rather, a private right of action "is established by section 4 of the Clayton Act, which authorizes private suits by

3

stating a Sherman Act violation, a private plaintiff 'must allege a combination or some form of concerted action between at least two legally distinct economic entities that constituted an unreasonable restraint of trade either per se or under the rule of reason.'" *Ruotolo*, 933 F. Supp. 2d at 519 (quoting *Primetime 24 Joint Venture v. NBC*, 219 F.3d 92, 103 (2d Cir. 2000)). "Additionally, 'a plaintiff must independently show "antitrust injury"'—also called 'antitrust standing'—because 'a plaintiff can recover only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior.'" *Id.* (quoting *Primetime 24*, 219 F.3d at 103). Here, Plaintiff's claim fails because he does not adequately allege both a substantive antitrust violation and antitrust standing.

    A.    **Substantive Antitrust Violation**

"The Sherman Act prohibits, *inter alia*, '[e]very contract, combination . . . , or conspiracy, in restraint of trade or commerce among the several States.'" *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) (quoting 15 U.S.C. § 1). However, "§ 1 of the Sherman Act 'does not prohibit [all] unreasonable restraints of trade . . . but only restraints effected by a contract, combination, or conspiracy.'" *Twombly*, 550 U.S. at 553 (quoting *Copperweld Corp.* v. *Independence Tube Corp.*, 467 U.S. 752, 775 (1984)). Therefore, "[t]he crucial question is whether the challenged anticompetitive conduct stem[s] from independent decision or from an agreement, tacit or express." *Id.* (internal quotations and citation omitted). "In order to establish a conspiracy in violation of § 1, . . . proof of joint or concerted action is required; proof of unilateral action does not suffice" because "'[i]ndependent action is not proscribed. A [party] of course

---

'any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws.'" *In re Publ'n Paper Antitrust Litig.*, 690 F.3d at 62 (quoting 15 U.S.C. § 15). In light of Plaintiff's *pro se* status, the Court construes his Sherman Act claim as being brought pursuant to the relevant portions of the Clayton Act.

generally has a right to deal, or refuse to deal, with whomever it likes, *as long as it does so independently.*'" *Anderson News*, 680 F.3d at 183 (emphasis in original) (quoting *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984)); *see also Moccio v. Cablevision Sys. Corp.*, 208 F. Supp. 2d 361, 379 (E.D.N.Y. 2002) (noting that a plaintiff "must allege an impermissible agreement among legally distinct entities that constitutes an unreasonable restraint of trade") (citing *Primetime 24*, 219 F.3d at 103); *Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) ("Independent actions taken by an entity fall outside the purview of [section] 1.").

Here, Plaintiff fails to adequately allege proof of joint or concerted action between Defendants. Though he alleges the existence of an "Industry Agreement," (Am. Compl., Dkt. 11, ¶ 18 (alleging that there is a "private agreement among lender, servicer and trustee" where "the homeowner-mortgager is never permitted to buy the note and mortgage when they are being offered for sale and sold")), he does not plead specific facts showing that Defendants actually chose to enter into such an agreement. "To state a claim under Section 1, plaintiffs 'must do more than merely allege the existence of a conspiracy. . . . They must provide some factual support for the allegation.'" *Kahn v. iBiquity Digital Corp.*, No. 06-CV-1536 (NRB), 2006 WL 3592366, at *4 (S.D.N.Y. Dec. 7, 2006), *aff'd*, 309 F. App'x 429 (2d Cir. 2009) (quoting *Mathias v. Daily News, L.P.*, 152 F. Supp. 2d 465, 483–84 (S.D.N.Y. 2001)); *Anderson News*, 680 F.3d at 184 ("At the pleading stage, a complaint claiming conspiracy, to be plausible, must plead 'enough factual matter (taken as true) to suggest that an agreement was made,' *i.e.*, it must provide 'some factual context suggesting [that the parties reached an] agreement,' not facts that would be 'merely consistent' with an agreement.") (quoting *Twombly*, 550 U.S. at 556, 549, 557). Specifically, though Defendants U.S. Bank and U.S. National Bank Association as Trustee may have benefitted

5

from Defendant Nationstar's rule that it does not allow the homeowner to re-purchase his home in a short sale, in that it allowed them to purchase the property themselves, Plaintiff does not allege any facts to suggest that Defendants have explicitly agreed to this rule as a way to minimize competition. In fact, Plaintiff's allegation that Defendant U.S. National Bank Association as Trustee purchased the Property at a "foreclosure auction" (Am. Compl., Dkt. 11, ¶ 6) supports the opposite inference: that it had to compete against other buyers in order to purchase the Property.

This inference is further supported by Plaintiff's own allegations that Defendant Nationstar is able and/or willing to sell the Property to numerous buyers. (*Id.* ¶ 25 (noting that the Industry Agreement "permit[s] [the] short sale of the home or sale of a defaulted note and mortgage *to anyone* but the homeowner-mortgagor (or relatives or business associates)") (emphasis added).) As a result, Plaintiff's allegations, far from adequately alleging the existence of joint or concerted action to thwart competition, at most suggest that Defendants are engaging in parallel conduct. Such allegations are insufficient to state an antitrust claim. *See Twombly*, 550 U.S. at 553 ("While a showing of parallel business behavior is admissible circumstantial evidence from which the fact finder may infer agreement, it falls short of conclusively establishing agreement or itself constituting a Sherman Act offense.") (internal quotations, alterations, and citation omitted); *Stone v. Ocwen Loan Servicing, LLC*, No. 17-CV-668 (AT), 2017 WL 5240904, at *5–6 (N.D. Ga. Oct. 19, 2017) ("In other words, Defendants do not want to incentivize borrowers to cease making payments on their mortgage in order to get out of it and try to get a better deal. Thus, it is equally (if not more) plausible that other lenders have such a 'short sale' policy not to restrain trade but because it makes good business sense—as a form of 'conscious parallelism.'") (quoting *Twombly*, 550 U.S. at 553–54) ("Even conscious parallelism, a common reaction of firms in a concentrated market that recognize their shared economic interests and their interdependence with respect to

price and output decisions is not in itself unlawful.") (internal quotations, brackets, and citations omitted); *see also Perdum v. Wells Fargo Home Mortg.*, No. 17-CV-972 (SCJ) (JCF), 2017 WL 8186694, at *23 (N.D. Ga. Dec. 8, 2017) (finding that the plaintiff failed to state an antitrust claim when the "[p]laintiff states that the short sale agreement is 'industry-wide' and has been contemplated by 'defendants and their co-conspirators,' yet she does not point to the 'persons or distinct business entities' who are supposed to have entered into a trade restraint scheme with [the defendant]"). Accordingly, the Court finds that Plaintiff has failed to state an antitrust claim.

### B. Antitrust Standing

Plaintiff's claim also fails because he does not adequately allege that he has the necessary antitrust standing[4] to bring an antitrust claim. "To have standing to assert a violation of the antitrust laws, a plaintiff must show that the acts complained of have adversely affected competition, not simply the competitor who is asserting the claim." *Boyer v. Channel 13, Inc.*, No. 04-CV-2137 (JRS) (FM), 2005 WL 2249782, at *8 (S.D.N.Y. Mar. 9, 2005). "Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Greene v. Conn. Bd. of Accountancy*, No. 00-CV-599 (CFD), 2001 WL 286855, at *2–3 (D. Conn. Mar. 20, 2001) (quoting *Balaklaw v. Lovell*, 14 F.3d 793, 796 (2d Cir. 1994)). This "antitrust injury requirement underscores the fundamental tenet that the antitrust laws were enacted for the protection of competition, not competitors." *Id.* (internal quotations, brackets, and citation

---

[4] "Antitrust standing, distinct from constitutional standing, is 'a threshold, pleading-stage inquiry and when a complaint by its terms fails to establish this requirement [the court] must dismiss it as a matter of law.'" *Abbott Labs. v. Adelphia Supply USA*, No. 15-CV-5826 (CBA) (LB), 2017 WL 5992355, at *9 (E.D.N.Y. Aug. 10, 2017) (quoting *Gatt Commc'ns Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 75 (2d Cir. 2013)).

7

omitted). "[The Court] can ascertain antitrust injury only by identifying the anticipated anticompetitive effect of the specific practice at issue and comparing it to the actual injury the plaintiff alleges." *Abbott Labs.*, 2017 WL 5992355, at *9 (quoting *Port Dock & Stone Corp. v. Oldcastle Ne. Inc.*, 507 F.3d 117, 122 (2d Cir. 2007)).

Here, Plaintiff's amended complaint does not describe an injury to competition; rather, Plaintiff alleges only an injury to himself, namely that his mother's 2015 short sale offer was rejected because she is related to him, the mortgager. (Am. Compl., Dkt. 11, ¶ 12.) "It is insufficient for a plaintiff to allege a personal injury 'causally linked' to an asserted antitrust violation." *Abbott Labs.*, 2017 WL 5992355, at *9 (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat Inc.*, 429 U.S. 477, 489 (1977)); *see Balaklaw*, 14 F.3d at 797 ("It is now well settled that in order to have standing to prosecute private antitrust claims, plaintiffs must show more than that the defendants' conduct caused them an injury."). Plaintiff's conclusory statements, that competition is affected because homeowners who seek to re-purchase their homes after a judgment of foreclosure are unable to pursuant to the Industry Agreement, are insufficient to establish an antitrust injury when Plaintiff also acknowledges that entities like Nationstar are willing to sell homes to anyone but the homeowner and their close associates and does not plead any specific market effects as a result of this Industry Agreement. Accordingly, Plaintiff has also failed to adequately allege antitrust standing.

## II. Diversity Jurisdiction

Plaintiff also seems to invoke the Court's diversity jurisdiction. (Am. Compl., Dkt. 11, ¶ 2 (stating that "[j]urisdiction is founded on diversity of citizenship and amount").) Though Plaintiff does not cite to or reference any specific state law that has been violated, Plaintiff appears to challenge the state court's judgment of foreclosure and sale to Defendants, which are non-New

York citizens. (*See id.* ¶ 28 (asking for an injunction to prevent Defendants from transferring or selling the Property without offering Plaintiff the opportunity to purchase the Property)); *see also Hershfeld v. JM Woodworth Risk Retention Grp., Inc.*, No. 16-CV-6369 (BMC), 2017 WL 1628886, at *3 (E.D.N.Y. May 1, 2017) ("For purposes of establishing diversity jurisdiction, a corporation is deemed a citizen of the state where it has it[s] princip[al] place of business and of the state where it is incorporated."). However, as discussed in its prior decision, the *Rooker-Feldman* doctrine deprives this Court of jurisdiction over such a claim. *See Murphy v. Riso*, No. 11-CV-873 (JFB) (ARL), 2012 WL 94551, at *6 (E.D.N.Y. Jan. 12, 2012) ("[N]umerous courts in this Circuit [] have consistently held that attacks on a judgment of foreclosure are barred by the *Rooker-Feldman* doctrine.") (collecting cases). Plaintiff has therefore failed to adequately invoke the Court's diversity jurisdiction.

\*   \*   \*

Given that Plaintiff has paid the filing fee, the Court may only dismiss this action if it lacks subject matter jurisdiction or finds that the action is frivolous. *Fitzgerald*, 221 F.3d at 363–64. The gravamen of Plaintiff's amended complaint is that he should be allowed to remain in the Property, even though a state court has entered a judgment of foreclosure. "The Court does not have jurisdiction to entertain a challenge to a state court judgment of foreclosure, however creatively cloaked." *Woermer v. Hirsh*, No. 18-CV-1898 (KAD) (SALM), 2018 WL 7572237, at *3 (D. Conn. Dec. 11, 2018). Here, the Court finds that Plaintiff's attempt to shoehorn a review of the state court foreclosure into an antitrust claim is frivolous, given that Plaintiff is unable to adequately allege even the most basic elements of such a claim or standing. Similarly, the Court finds Plaintiff's attempt to invoke diversity jurisdiction both frivolous, for failure to identify any

state law that has been violated, and as lacking subject-matter jurisdiction, pursuant to *Rooker-Feldman*. Accordingly, the Court dismisses Plaintiff's complaint in its entirety.

**III.    Motion for PI and TRO**

On December 16, 2019, Plaintiff filed a TRO/PI motion seeking to prevent Defendants from evicting Plaintiff and transferring or selling the Property until Plaintiff is first given the opportunity to purchase the Property. (Dkt. 13, at 3–4.) "To obtain a preliminary injunction the moving party must show, first, irreparable injury, and, second, either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships decidedly tipped in the movant's favor." *Green Party of N.Y. State v. N.Y. State Bd. of Elections*, 389 F.3d 411, 418 (2d Cir. 2004); *see also Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) ("It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction."). Given that the Court has found, as detailed *supra*, that Plaintiff has failed to state a claim under either antitrust law or through diversity jurisdiction, Plaintiff is unable to demonstrate a likelihood of success on the merits. Accordingly, the Court denies Plaintiff's motion.

**IV.    Leave to Amend**

The Court notes that, in general, "[a] *pro se* complaint is to be read liberally [and] the [C]ourt should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Plaintiff has already been given one chance to amend his complaint. Given the allegations in Plaintiff's amended complaint, the Court finds that allowing any further chances to replead would be futile. It is clear from the allegations in both of Plaintiff's complaints that Plaintiff is seeking relief from a state court judgment of foreclosure that would allow him to

remain in his home. With limited exception,[5] this Court does not have the ability to give Plaintiff the relief he seeks. *See, e.g.*, *Woermer*, 2018 WL 7572237, at *3; *Murphy*, 2012 WL 94551, at *6. Therefore, "[t]he problem with [Plaintiff]'s causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied." *Cuoco*, 222 F.3d at 112.

## CONCLUSION

For the reasons stated above, Plaintiff's TRO/PI motion is denied and his amended complaint is dismissed. Although Plaintiff paid the filing fee to commence this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: December 20, 2019
    Brooklyn, New York

---

[5] As the Court stated in its previous Memorandum & Order, "[t]hough the Court lacks subject-matter jurisdiction to review a state-court judgment, it can consider 'claims sounding under the [Fair Debt Collection Practices Act ("FDCPA")], RICO, and state law' because such claims 'speak not to the propriety of the state court judgments, but to the fraudulent course of conduct that defendants pursued in obtaining such judgments.'" *Ramnarine*, 2019 WL 5309994, at *3 (quoting *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94–95 (2d Cir. 2015)). Plaintiff was afforded the opportunity to replead any claims based on the FDCPA or similar statutes. *See id.* Plaintiff instead chose to file the instant amended complaint, relying, unsuccessfully, on the Sherman Act. None of the allegations in the amended complaint support an inference that Defendants engaged in a course of fraudulent conduct to obtain the state foreclosure judgment. The Court therefore concludes that Plaintiff is unable to, in good faith, plead any claims pursuant to the FDCPA or other similar statutes, which further indicates that any further opportunities to replead would be futile.